United States Court of Appeals
Fifth Circuit

**F I L E D**

August 7, 2007

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT**

No. 06-10962
Summary Calendar

**UNITED STATES OF AMERICA,**

Plaintiff-Appellee,

versus

**RASMI KHADER ALMALLAH,**

Defendant-Appellant.

**Appeal from the United States District Court
for the Northern District of Texas
(3:04-CV-2230)**

Before DAVIS, BARKSDALE, and BENAVIDES, Circuit Judges.

PER CURIAM:[*]

Rasmi Khader Almallah, a native and citizen of Jordan, challenges the revocation of his admission to United States citizenship and cancellation of his certificate of naturalization. He contends the Government failed to prove by clear and convincing evidence that he fraudulently obtained citizenship; and the court abused its discretion by not allowing him to amend his answer to assert a selective-prosecution defense and by denying the testimony of his expert witness.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

A bench trial produced the following facts. After coming to the United States on a student visa, Almallah left school to manage and partly own a Sonic restaurant in Dallas, Texas. Because his student visa was nearing expiration, Almallah asked a Sonic employee, who was a United States citizen, to marry him. He offered to pay her money in exchange for assisting him in obtaining a green card and promised a divorce thereafter. After two employees refused his offer, another woman, Rose Marie Hawley, a United States citizen, accepted.

Almallah and Hawley married on 21 December 1981, four days before Almallah's student visa expired. Almallah testified the marriage was legitimate and that they lived together. (As discussed *infra*, the district court, based on Hawley's and two other witnesses' testimony, found, however, that the couple "did not marry with the intent to establish a life together and assume the duties and obligations of husband and wife." Rather, "they never resided together as husband and wife, never established joint bank accounts, never filed joint income tax returns, and their purpose for marrying was solely for [Almallah] to obtain lawful permanent resident immigration status". The court found Almallah's testimony not credible.)

In March 1982, Hawley filed a "Petition for Alien Relative", INS form I-130, seeking immediate-relative status for Almallah. After that Petition was approved, Almallah filed his "Application for Status as Permanent Resident", Form I-485, requesting

2

permanent-resident status. In response to a question on that application, and during an INS interview conducted under oath, Almallah represented that he and his wife resided together. Later that year, the INS granted Almallah permanent resident status.

Shortly thereafter, Almallah filed for, and received, a divorce from Hawley, as promised. Approximately three years later, he married a Jordanian woman, with whom he subsequently had seven children. In June 1987, Almallah filed an "Application to File Petition for Naturalization", INS form N-400, based on his eligibility for naturalization as a lawful permanent resident for at least five years, pursuant to 8 U.S.C. § 1427. Almallah responded "no" to a question on that application which asked if he had ever given false testimony for the purpose of obtaining any benefits under the Immigration and Nationality Act. During a subsequent INS interview, Almallah signed a sworn statement that his application's contents were true. On 29 January 1988, the INS approved Almallah's application. He filed his "Petition for Naturalization" the same day and was admitted to United States citizenship on 29 July 1988.

Conclusions of law are reviewed *de novo*; findings of fact, for clear error. **United States v. Lopez-Ortiz**, 313 F.3d 225, 228 (5th Cir. 2002). "Deference is given to the district court's assessment of the credibility of witnesses and a finding of fact in that regard will not be overturned unless manifest error appears in the record." **Trust Co. of La. v. N.N.P. Inc.**, 104 F.3d 1478, 1485 (5th

3

Cir. 1997). Evidentiary rulings in a denaturalization proceeding are evaluated for an abuse of discretion. *United States v. Hajda*, 135 F.3d 439, 443 (7th Cir. 1998).

"The Government carries a heavy burden of proof in a proceeding to divest a naturalized citizen of his citizenship [because] American citizenship is a precious right [and s]evere consequences may attend its loss, [especially] when the person has enjoyed his citizenship for many years". *Costello v. United States*, 365 U.S. 265, 269 (1961). Specifically, the Government must prove by "clear and convincing" evidence that the naturalization was procured illegally or by concealment of a material fact or willful misrepresentation. *Schneiderman v. United States*, 320 U.S. 118, 123 (1943); *see also* 8 U.S.C. § 1451(a). Naturalization is "illegally procured" when the individual was statutorily ineligible for naturalization before and including the time he was naturalized. *Fedorenko v. United States*, 449 U.S. 490, 506 (1981). To warrant denaturalization, any concealment or misrepresentation must be "both willful and material". *Kungys v. United States*, 485 U.S. 759, 767 (1988).

Allmallah first contends he was improperly denaturalized because he was selectively prosecuted. *See*, *e.g.*, *United States v. McWilliams*, 730 F.2d 1218, 1221 (9th Cir. 1984) (prosecution improper when others similarly situated are not prosecuted and defendant was selected based on race, religion, or exercise of a

4

constitutional right). Almallah did not assert selective prosecution in his original answer to the Government's complaint, and the district court refused his motion for leave to amend, filed eight months after the deadline for amending pleadings, because Almallah failed to show good cause. In this regard, the district court did not abuse its discretion. (In any event, Almallah has shown neither that selective prosecution applies in the civil immigration context nor that it is a defense on the merits. *See United States v. Armstrong*, 517 U.S. 456, 463 (1996) (applying selective prosecution principle in the *criminal* context and stating: a "selective prosecution claim is not a defense on the merits ... but an independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution").)

Almallah next claims the district court abused its discretion in denying the testimony of his expert witness, Harry Joe, who would have opined the Government lacked clear and convincing evidence that Almallah entered into a sham marriage. The court found: "Mr. Joe's opinion would supply ... no information other than Mr. Joe's own view of how the verdict should read". "Because a district court has broad discretion in deciding the admissibility *vel non* of expert testimony, we will not find error unless the ruling is *manifestly erroneous*." *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004) (emphasis in original). The court did not err in excluding Mr. Joe's testimony.

Finally, Almallah maintains the district court erred in holding, by clear and convincing evidence, that he fraudulently obtained United States citizenship. The district court found Almallah "entered into a sham marriage by paying a United States citizen, whom he never resided with or otherwise had the intention to reside with, to marry him for the purpose of circumventing immigration law and obtaining legal immigration status". This factual finding, which we review only for clear error, was based on Hawley's testimony and that of two corroborating witnesses. Only Almallah's testimony contradicts this finding, and, as noted *supra*, the court found his testimony "not credible". Accordingly, the district court did not clearly err in this finding or those findings discussed below that stem from it. *N.N.P. Inc.*, 104 F.3d at 1485 (factual finding not clearly erroneous unless manifest error appears in the record).

An alien's marrying a United States citizen for the purpose of circumventing immigration laws is not valid to confer immigration benefits. *See* *Lutwak v. United States*, 344 U.S. 604 (1953). Because Almallah's marriage to Hawley was invalid, he was *not* eligible for immediate-relative status, permanent-resident status, or naturalization. Moreover, Almallah wilfully misrepresented his eligibility to the INS at each of these stages. *Witter v. INS*, 113 F.3d 549, 554 (5th Cir. 1997) (misrepresentation wilfull if deliberate, voluntary, and knowingly false; proof of intent to deceive not required). Because Almallah did not comply with the

naturalization prerequisites, his naturalization was illegally procured. *Federenko*, 449 U.S. at 506 (naturalization illegally procured when individual was statutorily ineligible when naturalized). Therefore, the evidence was clear and convincing that Almallah fraudulently obtained his United States citizenship.

*AFFIRMED*